IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM J. FUHRMEISTER, d/b/a WILLIAM J. FUHRMEISTER AGENCY and ROBERT FELDMAN, <br><br> Defendants. <br> ------------------------------------------------------- <br> WILLIAM J. FUHRMEISTER, <br><br> Counter-Plaintiff <br><br> v. <br><br> NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE <br><br> Counter-Defendants. <br> ------------------------------------------------------- <br> WILLIAM J. FUHRMEISTER, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> ROBERT FELDMAN, <br><br> Third-Party Defendant. | CIVIL ACTION <br> NO. 14–cv–02823 <br><br><br><br><br><br><br> <u>TRANSFERRED CASE</u> <br><br> Case No. 1:15–cv–80916-RLR <br><br> From the United States District Court For the Southern District of Florida <br><br> (Judge Robin L. Rosenberg) |

PAPPERT, J.                                      March 15, 2016

<u>MEMORANDUM</u>

North American Company for Life and Health Insurance ("NACOLAH") sued its former soliciting agent William J. Fuhrmeister ("Fuhrmeister") and Robert Feldman ("Feldman"), alleging breach of contract, breach of fiduciary duties, fraud, violations of the Pennsylvania

1

and/or Florida anti-rebate statutes and unjust enrichment. NACOLAH's claims arise from the sale of a life insurance policy to Arthur and Carole Cohn ("the Cohns"). Unbeknownst to NACOLAH, Fuhrmeister and Feldman entered into an agreement whereby Feldman, the Cohns' financial adviser, solicited and sold the Cohns a life insurance policy issued by NACOLAH. Because Feldman was not under contract with NACOLAH to sell life insurance policies on its behalf, Fuhrmeister signed the insurance policy application as the soliciting agent. Fuhrmeister then remitted to Feldman a portion of the commissions earned on the sale of the policy, which Feldman rebated to the Cohns. Before the Court is NACOLAH's motion for entry of default judgment against Feldman. For the reasons that follow, the Court grants NACOLAH's motion.

## I.

NACOLAH filed its original complaint against Fuhrmeister on May 16, 2014. (ECF No. 1.) Fuhrmeister then filed a third-party complaint against Feldman on September 8, 2014. (ECF No. 11.) Feldman was served with the third-party complaint on October 11, 2014 (ECF No. 14), but chose not to answer. (*See generally* ECF Nos. 1–85.) On January 7, 2015, the Clerk of Court entered default against Feldman for failure to appear, plead or otherwise defend the third-party complaint. (ECF No. 22.) After seeking leave of Court, NACOLAH filed an amended complaint against Fuhrmeister and Feldman on January 13, 2015. (ECF No. 24.) NACOLAH alleges that Feldman: (1) committed fraud; (2) violated Florida's Anti-Rebate Statute, Fla. Stat. § 626.572; and (3) unjustly enriched himself by retaining commissions unlawfully paid to him by Fuhrmeister. (Am. Compl. ¶¶ 29–36.) Feldman was served with the amended complaint on January 27, 2015 (ECF No. 28), but again chose not to answer. (*See generally* ECF Nos. 1–85.)

The Court held a scheduling conference on April 16, 2015. (ECF No. 39.) Before the conference, Feldman emailed to the Court a physician's note excusing him from attending the

2

conference due to health concerns.  (04/10/2015 E-mail, 2:55 p.m.)[1]  Although the Court offered Feldman the ability to participate via telephone, he failed to call in or hire an attorney to represent his interests.  (04/13/2015 E-mail, 11:42 a.m.; ECF No. 39.)  The Clerk of Court entered default against Feldman for a second time on June 9, 2015 after he failed to appear, plead or otherwise defend the amended complaint.  (ECF No. 43.)  Feldman was deposed, without counsel, on July 9, 2015.  (Pl.'s Mot. Summ. J. at Ex. 10, ECF No. 60.)  The Court held another telephone conference on July 31, 2015, again offering Feldman the ability to participate via telephone.  (07/29/2015 E-mail, 1:39 p.m.)  Feldman emailed the Court and stated that he was not able to attend due to his health concerns.  (07/29/2015 E-mail, 3:40 p.m.)  He did not, however, call in or hire an attorney to represent his interests.

Despite Feldman's absence, the proceedings continued.  NACOLAH and Fuhrmeister filed motions for summary judgment on October 26, 2015.  (ECF Nos. 59–60.)  The Court heard oral argument on January 6, 2016 (ECF No. 74) and denied both motions.  (ECF Nos. 77–78.)  Shortly thereafter, NACOLAH and Fuhrmeister entered a stipulation dismissing all claims against each other with prejudice.  (ECF No. 83.)  Thus, the only remaining claims in the case are those alleged against Feldman, who for eight months has been in default.

NACOLAH filed its motion for entry of default judgment against Feldman on January 21, 2016 (ECF No. 81) and mailed Feldman a copy that same day.  (ECF No. 81 at Ex. 2.)  Feldman failed to respond to the motion.  (*See generally* ECF Nos. 1–85.)  At that point, the Court could have granted NACOLAH's motion as unopposed and entered judgment against Feldman in the sum of $100,640.  Feldman e-mailed the Court on February 6, 2016, however, stating: "I definitely wish to be heard on this matter."  (02/06/2016 E-mail, 2:35 p.m.)  Attached

---

[1] The email exchanges between the Court and Feldman are not publicly viewable on the Court's Case Management/Electronic Case Files ("CM/ECF") System.  The emails are, however, on file with the Court.

to Feldman's email, however, was yet another physician's note seeking to excuse him from appearing before the Court. (*Id.*) The Court scheduled a show cause hearing on NACOLAH's motion for March 8, 2016. (ECF No. 82.) In its Order scheduling the hearing, the Court again provided Feldman the ability to participate via telephone. (ECF No. 82.) Feldman called in and participated in the hearing. (*See generally* Oral Argument Transcript ("Oral Arg."), ECF No. 85.)

At the hearing, Feldman was asked why he chose to ignore every aspect of the proceedings. (Oral Arg. 18:25–19:1.) His response was: "Because I felt—honestly, sir, I felt honestly that I was in no way, shape or form involved in this thing." (*Id.* 19:2–4.) The Federal Rules of Civil Procedure do not excuse Feldman's decision to ignore a lawsuit filed against him solely because he "honestly . . . felt . . . that [he] was in no way, shape or form involved in this thing." (*Id.*) Feldman admitted that he hired an attorney in the underlying lawsuit,[2] but failed to offer any valid reason for why he did not do so in this case. (*Id.* 24:13–17.) He did mention, however, that he would now be hiring an attorney to sue NACOLAH given that we are "at this point." (*Id.* 24:13–17; 25:2–14.)

## II.

Pursuant to the Federal Rules of Civil Procedure, "once the clerk of court has entered a default, the party seeking the default then must apply to the court for entry of a default judgment." *E. Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009) (citing Fed. R. Civ. 55(b)(2)); *see also Fehlhaber v. Indian Trails, Inc.*, 425 F.2d 715, 716 (3d Cir. 1970). Generally, default judgment is disfavored because it prevents a case

---

[2] The Cohns purchased the life insurance policy at issue in this case. After discovering that the policy would not function as anticipated, the Cohns sued Fuhrmeister and NACOLAH in the Court of Common Pleas of Philadelphia County. (Pl.'s Mot. Summ. J. at Ex. 32.) NACOLAH joined Feldman in the underlying lawsuit, but ultimately entered into a settlement agreement with the Cohns on August 15, 2014. (*Id.* at Ex. 2 ¶ 95; Ex. 33.)

from being decided on the merits. *Id*. Thus, because a party is "'not entitled to a default judgment as of right,' the court must use 'sound judicial discretion' in weighing whether or not to enter a default judgment." *Id*. (quoting *Prudential–LMI Commercial Ins. Co. v. Windmere Corp.*, 1995 WL 422794, *1 (E.D. Pa. July 14, 1995) (internal quotations omitted)).

When considering whether to enter default judgment, the Court should look to: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). The primary question for the Court to consider is whether the defendant has a meritorious defense. *Id*.

"The showing of a meritorious defense is accomplished when allegations of [a] defendant's answer, if established [at] trial, would constitute a complete defense to the action." *Id*. (internal citations omitted). At the show cause hearing, Feldman was asked whether he had any defense to NACOLAH's allegations. Feldman gave two answers: (1) he felt that he "was in no way, shape or form involved in this thing"; and (2) the $100,640 rebate he paid to the Cohns was "a hundred percent legit" under Florida law. (Oral Arg. 17:13–18:9; 19:2–4.)

Both of Feldman's defenses fail given that his own deposition clearly establishes he was "involved in this thing," and that the $100,640 rebate paid to the Cohns was not "a hundred percent legit" under Florida law. (Oral Arg. 17:13–18:9; 19:2–4.) Despite not having the proper license to solicit the policy at issue, Feldman admitted in his deposition that: (1) he provided the Cohns with policy illustrations; (2) he obtained an insurance application from Mrs. Cohn; (3) he delivered the policy after it was issued; and (4) he collected the Cohns' initial premium payment and Mrs. Cohn's Health Statement. (Pl.'s Mot. Summ. J. at Exs. 10, 14.) Because Feldman was not properly licensed and did not have a contract with NACOLAH to sell life insurance policies

on its behalf, Fuhrmeister signed Mrs. Cohn's insurance application as the soliciting agent.[3] (*Id.* at Exs. 1, 3.) Feldman admitted that he then received a $100,640 check from Fuhrmeister, which represented a portion of Fuhrmeister's commission paid to him by NACOLAH for the sale of the policy. (*Id.* at Ex. 10.) Feldman additionally admitted that he subsequently paid that $100,640 to the Cohns as a "rebate." (*Id.*)

Florida law generally prohibits rebating unless certain conditions are met, which is not the case here.[4] Additionally, Florida law defines an "unlawful rebate" as, *inter alia*:

> Paying, allowing, or giving, or offering to pay, allow, or give, directly or indirectly, *as inducement to such insurance contract, any unlawful rebate of premiums payable on the contract*, any special favor or advantage in the dividends or other benefits thereon, *or any valuable consideration or inducement whatever not specified in the contract*.

Fla. Stat. § 626.9541(1)(h)(1)(b) (emphasis added). Feldman's payment of $100,640 to the Cohns—which by his own admission was a "rebate"—clearly constitutes "valuable consideration" paid directly to the Cohns. Moreover, Feldman admitted that he agreed to pay the first year's agent commissions in connection with the purchase of the policy as an inducement for the sale of the contract. (Pl.'s Mot. Summ. J. at Ex. 10.) Feldman's assertion that his rebate was "a hundred percent legit" is belied by his own deposition testimony. Feldman has accordingly failed to establish any meritorious defense.

---

[3] Fuhrmeister had a contract with NACOLAH allowing him to sell life insurance policies on NACOLAH's behalf. (Pl.'s Mot. Summ. J. at Ex. 2 ¶ 2.)

[4] Those conditions are: (a) the rebate shall be available to all insureds in the same actuarial class; (b) the rebate shall be in accordance with a rebating schedule filed by the agent with the insurer issuing the policy to which the rebate applies; (c) the rebating schedule shall be uniformly applied in that all insureds who purchase the same policy through the agent for the same amount of insurance receive the same percentage rebate; (d) rebates shall not be given to an insured with respect to a policy purchased from an insurer that prohibits its agents from rebating commissions; (e) the rebate schedule is prominently displayed in public view in the agent's place of doing business and a copy is available to insureds on request at no charge; (f) the age, sex, place of residence, race, nationality, ethnic origin, marital status, or occupation of the insured or location of the risk is not utilized in determining the percentage of the rebate or whether a rebate is available. Fla. Stat. § 626.572(1)(a)–(f). Nothing in the record supports a finding that Feldman's rebate to the Cohns met any of these requirements.

The Court next turns to an analysis of Feldman's conduct throughout these proceedings. Whether Feldman's conduct was "culpable" turns on whether his "actions [were] taken willfully or in bad faith." *In re USN Commc'ns, Inc.*, 288 B.R. 391, 397 (Bankr. D. Del. 2003). "Mere negligence does not amount to culpable conduct." *Id*. Feldman acknowledged—and the record establishes—that he was served with all pertinent documents throughout the case. (Oral Arg. 4:22–5:3.) Feldman contacted the Court on a number of occasions and provided physician's notes excusing him from attending the Court's scheduled conferences due to purported medical reasons. *See supra* Part I. Nothing prevented Feldman from hiring an attorney to represent his interests in a lawsuit in which he is a named defendant. Indeed, Feldman admitted that he hired an attorney to represent him in the underlying lawsuit, and would be hiring an attorney to sue NACOLAH given that we are "at this point." (*Id*. 24:13–17; 25:2–14.) Unfortunately for Feldman, the only reason we are "at this point" is because he chose to ignore the lawsuit filed against him. Feldman's conduct was not merely negligent, but rather willful and deliberate.

Feldman's culpable conduct, along with his failure to establish a meritorious defense, renders the analysis of whether NACOLAH suffered any prejudice unnecessary. The only issue left for the Court to determine is the judgment amount. Given the extensive discovery conducted by NACOLAH and Fuhrmeister in this case, the Court has before it "definite figures contained in the documentary evidence and detailed affidavits" that make the judgment amount easily discernible. *Amresco Financial I L.P. v. Storti*, 2000 WL 284203, *2 (E.D. Pa. Mar.13, 2000). NACOLAH seeks judgment in the amount $100,640, which represents the commission unlawfully paid to Feldman by Fuhrmeister, and subsequently to the Cohns by Feldman. These checks are part of the record and Feldman has admitted that he indeed received and paid that specific amount. (Pl.'s Mot. Summ. J. at Exs. 10, 33–34.) Default judgment is accordingly

7

entered against Feldman in the amount of $100,640 plus interest at the lawful rate from the date of the accompanying Order.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.